Beth Creighton, OSB #972440
E-mail: beth@civilrightspdx.com
Michael E. Rose, OSB #753221
E-mail: mrose@civilrightspdx.com
Laura Koistinen, OSB#175123
E-mail: laura@civilrightspdx.com
CREIGHTON & ROSE, PC
300 Powers Building
65 S.W. Yamhill Street
Portland, Oregon  97204
Phone:   (503) 221-1792
Fax:      (503) 223-1516

Of Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CORY ELIA and LESLEY MCLAM,** | Case No. 3:20-cv-1106 |
| Plaintiffs, | **COMPLAINT** |
| vs. | (Civil Rights - 42 USC § 1983 - First Amendment, Fourth Amendment, Fourteenth Amendment, 42 USC § 1981, 42 USC § 1985, Battery, Assault, Negligence, False Arrest, and 28 USC § 2201, *et seq*., Declaratory Relief) |
| **MAYOR TED WHEELER, JAMI RESCH, CHARLES LOVELL III, ERICA HURLEY, WILLIAM KEMMER, JOHN BARTLETT, MICHELLE PETTY, OFFICERS JANE DOES and JOHN DOES 1-31, CITY OF PORTLAND, STATE OF OREGON, OREGON STATE TROOPERS JANE DOES AND JOHN DOES,  MULTNOMAH COUNTY, JONELLE OLSZEWSKI, MULTNOMAH COUNTY SHERIFFS JANE DOES AND JOHN DOES 1-14, all in their individual capacities and official capacities,** | ***JURY TRIAL REQUESTED*** |
| Defendants. | |

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

# I.

# INTRODUCTION

1.       Pursuant to 42 USC § 1983, Plaintiffs allege the deprivation of rights guaranteed

to them by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution,

and the right to protest non-white citizens' not having equal benefits of all laws enjoyed by

whites pursuant to 42 USC §§1981 and 1985. Plaintiffs also bring pendant state law claims for

battery, assault, negligence, and false arrest. They seek declaratory relief, equitable relief,

damages, attorneys' fees and litigation expenses/costs, including expert witness fees and

expenses.

# II.

# JURISDICTION

2.       This court has jurisdiction by virtue of 28 USC § 1331, 28 USC § 1343 and 28

USC § 1367. Venue is proper in this district pursuant to 28 USC §§ 1391 (b) and 1391 (e). Most

of Defendants are located in Multnomah County, Oregon, and the events underlying this

Complaint took place therein, making venue proper in the District of Oregon, Portland Division.

# III.

# PARTIES

3.       At all times material herein, Plaintiff Cory Elia (hereafter "ELIA") is a freelance

journalist, videographer, photographer and managing editor for Village Portland who has

reported on matters of public interest for KBOO Community Radio, for the student-run Portland

State University newspaper, the Vanguard, and is documenting the Black Lives Matter

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 2 – COMPLAINT

movement in Portland, Oregon.

4.      At all times material herein, Plaintiff Lesley McLam (hereafter "MCLAM") is an independent journalist who has reported on matters of public interest for Village Portland, The Bridge and KBOO Community Radio, and is currently reporting on the Black Lives Matter movement in Portland, Oregon.

5.      The City of Portland (herein "Portland") is a municipality which was and is a public body in the State of Oregon and is responsible under state law for the acts and omissions of its law enforcement officers, agents, and other employees, including those whose conduct is at issue herein. The City of Portland purports to "operate without regard to race, color, national origin, religion, sex, sexual orientation, gender identity, marital status, age or disability in accordance with the Civil Rights Act of 1964, the Civil Rights Restoration Act of 1987....ORS chapter 659A, and Portland City Code Chapter 23. Title VI of the Civil Rights Act requires that no person in the United States shall be excluded from participation in, be denied the benefits of or otherwise be subjected to discrimination under any City program or activity, on the grounds of race, color, or national origin."[1]

6.      Defendant Ted Wheeler (herein "Defendant Wheeler") is the Mayor of the City of Portland, oversees the Portland Police Bureau (herein "PPB") and is responsible for legislative policy. He took an oath of office that states "I , Ted Wheeler, do solemnly (affirm or swear) that I will support the Constitutions of the United States and of the State of Oregon and the Charter of the City of Portland and its laws; I will faithfully, honestly and ethically perform my duties as Mayor..."  At all times relevant herein, he was acting under color of state law and in the scope of

---

[1] https://www.portlandoregon.gov/OEHR/article/513751.

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

his employment with the City of Portland.

7.     The purported mission of the Portland Police Bureau (herein "PPB") is "to work with the community to create and maintain safe neighborhoods. We reduce crime and the fear of crime by working with all citizens to preserve life, maintain human rights, protect property and promote individual responsibility and community commitment." Each of PPB's officers takes an oath of office: "I, (name), do solemnly (affirm or swear) that I will support the Constitutions of the United States and of the State of Oregon and the Charter of the City of Portland and its laws; and I will faithfully, honestly and ethically perform my duties as (officer)."

8.     Defendant Jami Resch (herein "Defendant Resch") was the Chief of the Portland Police Bureau from December 31, 2019, through June 8, 2020. Defendant Charles Lovell III (herein Defendant Lovell") was the Chief of the Portland Police Bureau from June 8, 2020, through the present. During the time they were Chief, they were each responsible for managing and directing the Portland Police Bureau and coordinating emergency response. Resch and Lovell were the chief policy-makers for the Portland Police Bureau during their respective times as Chief. At all times relevant herein, they were acting under color of state law and in the scope of their employment with the City of Portland.

9.     Defendant Erica Hurley (herein "Defendant Hurley") is a Captain with the Portland Police Bureau and serves as a deputy incident commander for the City of Portland's police response to the protesters. At all times relevant herein, she was acting under color of state law and in the scope of her employment with the City of Portland.

10.     Defendant William Kemmer (herein "Defendant Kemmer") is an employee with the Portland Police Bureau who has been responding to protests on behalf of the City of Portland.

At all times relevant herein, he was acting under color of state law and in the scope of his employment with the City of Portland.

11.    Defendant John Bartlett (herein "Defendant Bartlett")  is an employee with the Portland Police Bureau who has been responding to protests on behalf of the City of Portland. At all times relevant herein, he was acting under color of state law and in the scope of his employment with the City of Portland.

12.    Defendant Michelle Petty (herein "Defendant Petty")  is an employee with the Portland Police Bureau who has been responding to protests on behalf of the City of Portland. At all times relevant herein, she was acting under color of state law and in the scope of her employment with the City of Portland.

13.    Defendant Officer John and Jane Does 1-31 are employees with or agents of the Portland Police Bureau who have been responding to protests on behalf of the City of Portland and include incident commanders. The precise number and true identity of these defendants are presently unknown to Plaintiffs. At all times relevant herein, these defendants were acting under color of state law and in the scope of their employment with the City of Portland.

14.    On or about June 15, 2020, Portland City Commissioner Jo Ann Hardesty stated, "As our city enters its third week of protests, I remain concerned over the excessive force continually shown by Portland police against protesters and members of the media. This conduct is simply not acceptable. People protesting systemic change should not be assaulted; Members of the media documenting the protests should not be assaulted. While no one deserves to be met with the over-the-top response we've seen these past few weeks, it is particularly troubling to see this violence being carried out towards members of the media. The press acts as an accountability

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

measure during times like these and without them we would not know the extent to which people are being harmed because they're standing up for Black lives." She further declared, " Freedom of the press is a constitutional right that I do not take lightly, especially during this moment. My office continues to work in response to the call for a munitions ban and I will be meeting with Chief Lovell to discuss these concerns."

15.     Portland City Commissioner Chloe Eudaly "condemn[ed] the use of force against members of the media in Portland and around the country. Not only does this interfere with media doing their job and performing their essential watchdog role during this extraordinary time in our nation's history, I believe it's a violation of their constitutional rights and international human rights laws."

16.     On June 17, 2020, Defendant Mayor Wheeler and current Police Chief Chuck Lowell issued the following statement: "We were deeply disturbed to learn of incidents involving journalists during the demonstrations." Wheeler and Lovell further stated, "Members of the media, not just in Portland but around the country, should not be targeted, hurt or arrested while reporting on the demonstrations."

17.     At all times material herein, the Oregon State Police (herein "OSP") was and is a multi-disciplined organization charged with protecting the people, wildlife, and natural resources in Oregon, and an agency of the State of Oregon established pursuant to ORS 181A.015. OSP was responding to a mutual aid request in assisting the City of Portland with crowd control from May 29, 2020, through the present.

18.     Defendant Trooper John Doe 1 and Does 2-5 are employees with or agents of the State of Oregon who have been aiding and assisting the City of Portland. The precise number and

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

true identity of these Defendants are presently unknown to Plaintiffs. At all times relevant herein, these defendants were acting under color of state law and in the scope of their employment with the State of Oregon.

19.    Oregon Speaker of the House, Tina Kotek, decried the actions of the Portland Police (and law enforcement agencies assisting Portland) and declared, "A free press that holds government accountable is the cornerstone of democratic societies. The physical intimidation of journalists by Portland police officers is a threat to the First Amendment and a free press. It is appalling and must stop."

20.    Defendant Multnomah County (herein "Multnomah County") is a public body that employs law enforcement officers and controls the Multnomah County Detention Center. Multnomah County was responding to a mutual aid request in assisting the City of Portland with crowd control from May 29, 2020, through the present.

21.    Defendant Jonelle Olszewski (herein "Defendant Olszewski") is an employee with Multnomah County Sheriff's Department who worked in the Multnomah County Detention Center on the night of June 30, 2020, through the morning of July 1, 2020. At all times relevant herein, she was acting under color of state law and in the scope of her employment with Multnomah County.

22.    Defendant Sheriff John and Jane Does 1-8 are employees with or agents of Multnomah County who have been aiding and assisting the City of Portland and/or worked in the Multnomah County Detention Center on the night of June 30, 2020, through the morning of July 1, 2020. The precise number and true identity of these defendants is presently unknown to Plaintiffs. At all times relevant herein, they were acting under color of state law and in the scope

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

of their employment with Multnomah County.

## IV. FACTUAL ALLEGATIONS

23.     Black American George Floyd was murdered on the streets of Minneapolis by a police officer. For 8 minutes and 46 seconds the officer knelt on George Floyd's neck while he cried out for help, protested that he could not breathe and in his last moments cried out for his "Mama" before becoming non-responsive. Onlookers filmed and begged the officer to get off George Floyd's neck. Three other officers stood by, without giving George Floyd assistance, as their colleague slowly pressed the life out of Floyd with his knee to his neck. This incident sparked a public reckoning with demonstrations worldwide denouncing police brutality and the treatment of the Black communities by police.

24.     In Portland, Oregon there was a memorial for George Floyd on May 29, 2020. Lawful assemblies against police brutality, the militarization of the police and the continued murder of Black Americans at the hands of law enforcement officers have continued nightly since then.

25.     The City of Portland requested law enforcement officers from the following agencies to assist in the response in the Municipal Defendants' response to the demonstrations, including, but not limited to the Oregon State Police, the Oregon National Guard, Port of Portland Police, Gresham Police, Milwaukie Police, Washington County Sheriff's Office, Clackamas County Sheriff's Office, Columbia County Sheriff's Office, Clark County Sheriff's Office, City of Vancouver Police and City of Washougal Police (herein collectively referred to as "outside law enforcement agencies").  The outside law enforcement officers who answered Portland's call for assistance became agents of the City of Portland and were operating under

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Portland's direction, control and command.

26.    Members of law enforcement agencies from outside the state who participated in Portland's incident response did so pursuant to interagency agreements subject to the provisions of ORS 190.472 -.476. Members of outside law enforcement agencies from within the state who participated in Portland's incident response did so pursuant to interagency agreements authorized by ORS 190.010 -.030. At all times, the outside agency law enforcement officers were acting under the direction, control and command of the Portland Police Bureau.

27.    On May 31, 2020, Defendant Wheeler imposed a curfew of 8:00 PM throughout the City. Wheeler's curfew specifically exempted "members of the news media." On June 1, 2020, Wheeler renewed the order.

Https://www.portland.gov/sites/default/files/2020-06/signed-emergency-order-curfew-june-1-2.pdf

### MUNICIPAL ALLEGATIONS

28.    Defendant Resch, Defendant Lovell, Defendant Hurley and the Municipal Defendants authorized and directed John/Jane Doe officers to cover their name tags with tape and substitute their personnel number while working on the street during protests. This policy permitted Defendants John and Jane Does to actively conceal their identities from persons including Plaintiffs, while infringing upon the First Amendment rights of Plaintiffs and peaceful protesters for the purposes of avoiding legal accountability and depriving Plaintiffs of the opportunity for redress of grievances through access to the courts.

29.    The Municipal Defendants created a custom or policy to permit the officers on the scene to actively conceal their identities and authorized or permitted them to refuse to reveal their

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

identities when they were asked and permitted the officers to wear one number on their person and another on their helmet.

30.     The Municipal Defendants condoned a custom of permitting officers to violate PPB Identification Policy 0312.50 which requires them to display their name tags on their outermost garment and identify themselves upon request to a member of the public and to document in a report refusals to provide identification.

31.     Defendant Resch, Defendant Lovell, Defendant Hurley and the Municipal Defendants created a policy to kettle (also known as containment or corralling) protesters in an area leaving them no viable exit while ordering protesters to leave the area, then use tear gas, smoke bombs, pepper grenades, flash grenades, rubber bullets, foam-tipped munitions and batons when the demonstrators cannot leave. These tactics make it more difficult for law-abiding protesters and journalists to comply with police officers' dispersal orders.

32.      Defendant Resch, Defendant Lovell, Defendant Hurley and the Municipal Defendants created a policy or practice to provide unclear and confusing dispersal messages which do not reduce the concentration of persons in the area, but instead move the intact crowd into a mobile riot or panic that engulfs non-participating members of the community.

33.     Defendant Resch, Defendant Lovell, Defendant Hurley and the Municipal Defendants created a policy or practice that uses a random, uncontrolled and dangerous application of non-lethal technology that causes panic and incites counter-violence in the crowd. The Municipal Defendants have also failed to adequately train their employees to respond to civil disturbances and use the military equipment they possess.

34.     Defendant Resch and Defendant Hurley created a policy to ignore Defendant

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Wheeler's order exempting the press from the City-wide curfew on May 30, 2020, through June 1, 2020. Defendant Resch and Defendant Hurley communicated this order to rank-and-file Portland Police Officers.

35.     The Municipal Defendants each have a custom or policy of violating the constitutional rights of members of the press by arresting them, ignoring their credentials, inhibiting and deterring (including, but not limited to shining flashlights into their cameras) the lawful reporting of police brutality used against lawful protesters.

36.     The Municipal Defendants each have a custom or policy of using crowd control munitions and indiscriminate force without probable cause against journalists while they are engaged in lawful conduct.

37.     Defendants each have a custom or policy of failing to provide warnings before using chemical agents and injurious force against protesters and journalists.

38.     The Municipal Defendants each have a custom or policy of using invasive cell phone surveillance devices called "Stingray" technology, also known as DRT Boxes or "cell site simulators" or "IMSI catchers," that mimic cell phone towers and send out signals to trick cell phones in the area into transmitting their locations and identifying information without a warrant. This technology is being used to gather information about protesters' and journalists' cell phones and gathers information about the phones of countless bystanders who happen to be nearby.

39.     The Municipal Defendants each have a custom or policy of using technology to scramble or jam cell phone signals in the area in or around the protests, which has the effect of preventing live streaming of their misconduct and reporting on their misdeeds.

40.     The Municipal Defendants each has a custom and/or policy of escalation of use of

CREIGHTON | ATTORNEYS
& ROSE, PC | AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

force after the mainstream television and print news media leave the protests.

41.     On or about June 14, 2020, PPB announced that its dispersal orders apply to everyone, including reporters and legal observers. The Municipal Defendants each have a custom or policy of requiring the press to disperse, preventing the press from reporting on Defendants' unlawful conduct during the dispersal.

42.     The Municipal Defendants have a custom and/or policy of arresting independent journalists who are documenting their crowd control activities.

43.     The Municipal Defendants have a custom and/or policy of escalating and causing exigent circumstances which they use to justify their unreasonable use of force.

44.     The customs and/or policies listed were the proximate cause of harm to Plaintiffs.

**CORY ELIA**

45.     On May 29, 2020, ELIA attended the memorial for George Floyd held in downtown Portland, Oregon in order to document the emotional impact of the death of George Floyd and weight of the Black Lives Matter Movement on the lives of the participants in the memorial. The Portland Police showed up to the memorial to remember George Floyd, a victim of police brutality, in full-on military riot gear with full plating and vests, kevlar, batons, tasers, and assault rifles as if they were going to war.[2] Based upon the conflict between the police and the attendees and the level of aggression and brutality the Portland Police demonstrated against the attendees, ELIA returned nightly to stand witness and provide eyes and ears for the world to behold the Portland Police Bureau's mistreatment of the demonstrators.

---

[2] The Portland Police policies recognize the potential or perceived negative impact that appearing in "protective gear" may have on the crowd. See PPB Crowd Management/Crowd Control policy 0635.10 - 5.2.2.6.

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

**May 31, 2020**

46.    On May 31, 2020, ELIA was providing press coverage of the demonstrations against police brutality, the militarization of the police, and in support of the Black Lives Matters movement. ELIA was documenting the actions of both the police and the demonstration participants.

47.    As ELIA and a houseless reporter from Street Roots tried to leave downtown, they saw a demonstrator run by them. Immediately thereafter, a Defendant John/Jane Doe 1 threw a flash bang device[3] that exploded within feet of where ELIA and his colleague were. Temporarily blinded and disoriented, they were swarmed by Portland Police Officers Defendants John/Jane Does 2-6, who threatened to arrest them if they did not move "NOW!"  They held out their press passes and yelled "PRESS! PRESS!" and reminded the police officers that press were exempt from the curfew order.

48.    Defendants Jane/John Does 7-9 made physical contact with ELIA's torso and pushed ELIA and his colleague backward, causing ELIA to stumble into his bike, hurting his ankle in the process.

49.    As a direct and proximate result of this incident, in addition to his ankle injury, ELIA experienced upset, distress, outrage, betrayal, offense and apprehension about returning to document the Portland Police's misconduct at future protests.

/////

---

[3] A flash-bang is a non-lethal explosive device that is often used by police to stun and disorient people. The devices make a loud noise and emit a bright flash of light when they explode, temporarily blinding and deafening people nearby.
https://www.opb.org/radio/programs/thinkoutloud/segment/what-is-a-flash-bang/

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

**June 2, 2020**

50.     On the night of June 2, 2020, to the early morning hours of June 3, 2020, ELIA was again reporting on the demonstrations against police brutality, the militarization of the police and the support of the Black Lives Matter movement, documenting the actions of the police and the demonstration participants. He was filming on SW 4th Avenue and SW Taylor St. near the Justice Center.

51.     Participants in the demonstration marched up to the fence that PPB had erected around the Justice Center and started shaking the fence. Defendant John Doe 10, without any warning he would do so, deployed tear gas behind those supporters, trapping them between two buildings and the fence, forcing people to run through tear gas to escape. ELIA was 10-15 feet behind where the tear gas was deployed. For approximately 45 seconds, ELIA filmed the scene unfolding as the police indiscriminately directed tear gas over the crowd, possible smoke bombs, flash bangs, rubber bullets and foam-tipped projectiles into the crowd. This was contrary to the PPB's Crowd Management/Crowd Control Directive 0635.10.10.2 which mandates, "Member shall not deploy specialty impact munitions or aerosol restraints indiscriminately into a crowd."

52.     ELIA retreated back a half block to post his video on his Twitter account, and he ducked into the alcove of a parking structure. Someone came up next to him. Thinking it was a police officer, ELIA pulled out his press pass and raised it to display it clearly. "I'm a journalist" he said.

53.     The person who approached him was just another demonstration participant, so ELIA went back to his phone to post his video. As the person passed, ELIA clearly saw two officers. Upon seeing the officers, ELIA displayed his press pass again and stated "I'm a

CREIGHTON
& ROSE, PC    ATTORNEYS
                AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

journalist, I am a journalist. I'm just trying to do my job. I'm getting out of your way. I'm sorry."

54.     Immediately after hearing ELIA state he was a member of the press and viewing

his press pass, Defendant Jane Doe 10, raised her baton to a horizontal position, made contact

with ELIA's upper left arm and chest and shoved him into wall, causing him pain.

55.     As the effects of the tear gas were taking hold ELIA's eyes became clouded and

his lungs filled with tear gas. He started yelling, "I can't see, I can't breathe, I am a journalist.

Defendant Jane Doe 10 responded, "I don't care, you need to move now."

56.     Defendant John Doe 11 approached immediately after Defendant Jane Doe 10 and

stated, "I don't give a shit if you are a journalist, you need to move NOW!" using his baton to

shove ELIA from behind, throwing him head first into the cement wall.  The force of Defendant

John Doe 11's shove caused the top of ELIA's head to strike the wall.  ELIA became disoriented,

fell onto his bike, striking his ribs on his handlebars, and falling to the ground.  When he was on

the ground incapacitated, Defendant John Doe 11 began kicking him, telling him to get away

from the police line.

57.     Another independent journalist helped him escape further injury at the hands of

the police and took him to safety at SW Third Avenue and SW Yamhill Street. It took ELIA, who

has asthma, a few minutes to be able to breathe again. He vomited several times from the effects

of the tear gas, his eyes tearing and snot running out of his nose.

58.     As ELIA was sitting on the sidewalk on SW 3rd Avenue and SW Yamhill Street

recovering from the effects of the tear gas and trying to collect himself, a Portland Police Patrol

car drove by. There were no other people around. Officer John Doe 12 dropped another tear gas

canister right next to ELIA as he sat in a puddle of vomit. Again, ELIA experienced physical

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

pain, burning, discomfort and exacerbation of his asthma from the effects of the tear gas.

59.     On June 3, 2020, ELIA went to the hospital and was diagnosed with a contusion of the lumbar and spine, a wound to his right chest, and a closed head injury.

60.     On or about the night of June 6th, 2020, into the early morning of June 7, 2020, ELIA was attending another event mobilized by the Black Lives Matters movement near the Justice Center. A few rogue members of the crowd began cutting into the chain link fence that Portland had erected in front of the Justice Center. In response, Defendants Jane/John Doe 13-17 deployed a pepper-spray bomb and started shooting rubber bullets and foam projectiles indiscriminately into the crowd.

61.     ELIA attempted to escape the police's attack upon his person by going up SW Main Street toward SW 4th Avenue.  After being blocked from exiting there by a line of police officers, two female PPB officers directed ELIA to Lownsdale Square.

62.     When ELIA arrived at Lownsdale Square, he witnessed protestors bottlenecked there and police officers beating them with batons. ELIA believed it was his civic duty as a citizen and a journalist to document this event and pulled out his phone to video-record what was happening. He simultaneously had his press pass in his other hand.

63.     Defendant John Doe 18 stood between ELIA and the officers who were beating the protesters, looked at ELIA and his press pass, turned to look at what ELIA was filming (the officers beating the protesters), then turned back to ELIA and deliberately and maliciously deployed pepper spray directly in his face and eyes, coating his phone with the chemical agent.

64.     ELIA instantly fell to the ground, completely blinded, writhing in pain, the pepper spray burning his nose, mouth, scalp, back of hands, causing his eyes and nose to water,

CREIGHTON
& ROSE, PC   | ATTORNEYS
             | AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

and exacerbating his pre-existing asthma. ELIA was screaming, "THEY JUST SPRAYED ME!

I'M DOWN. I CAN'T SEE. I WAS HOLDING MY PRESS PASS OUT. AHHHH."

65.      Someone, believed to be a Portland Police Officer (Defendant John Doe 19)

walked up to ELIA, put his hands on ELIA's shoulder and stopped the phone from live

streaming. Defendant John Doe 19 provided some water for ELIA's eyes, but then abandoned

ELIA, making the conscious choice to leave the incapacitated ELIA on the scene to find his own

way out of the area.

66.      Still blinded by the pepper spray and yelling, "Can somebody help me? I'm

blind," ELIA opened his right eye briefly and made his way to SW 3rd Avenue and SW Salmon

Street. In stumbling blindly, attempting to leave the area and get help, he smacked into a bench,

fell over the bench and head first into the pavement.

67.      ELIA went to the hospital the following day and was diagnosed with another

closed head injury.

**June 30, 2020 - July 1, 2020**

68.      On June 30, 2020, ELIA went to another demonstration in North Portland to

document the police activity and the events as they unfolded.[4]  He used his cell phone to live

stream the events to his twitter account (@theRealCoryElia) that night. He arrived shortly after

the police deployed tear gas into the crowd.[5]

---

[4] The previous day his attorney sent a document preservation letter to the City Attorney instructing the City to preserve all documents concerning the protests from May 29, 2020, to the present.

[5] Four days earlier, the City entered into Stipulated Additional Temporary Restraining Order in *Don't Shoot Portland v. City of Portland, et al., 3:20-cv-00917-HZ*, where the City was ordered to restrict their use of tear gas to use as outlined in PPB's Use of Force Directive 101. A

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

69.     While filming the officers who were standing in the police line, ELIA recognized one of the PPB Officers as Defendant John Bartlett. ELIA said, "Are you Bartlett? I think I recognize you from the other night....It's Officer Bartlett, oh my goodness."

70.     Looking surprised, Defendant Bartlett turned to his fellow officer and said something. Within a minute, Defendant Barlett, Defendant Michelle Petty, Defendant John/Jane Doe 20 and Defendant Trooper John Doe descended upon ELIA, grabbing his arm and forcing him to the ground, dog-piling on top of him. ELIA had not committed any crime.  ELIA did not resist.

71.     As ELIA laid on his back with his knees up protecting his stomach and his arms in front of his face, a PPB Officer, believed to be Defendant Officer Petty, knelt on his shins. As she was positioning herself to restrain ELIA, ELIA was kicked in the scrotum, causing him pain and discomfort. Based on information and belief the officer who kicked ELIA was Defendant Petty. As he reacted to the pain of being kicked, ELIA's legs jerked forward to protect himself.

72.     After being handcuffed and led to a police vehicle, ELIA requested that his friend and coworker Leslie McLam be permitted to take his phone and press pass from him. Defendants refused, then transported him to the Multnomah County Detention Center (herein "MCDC").

73.     Once in MCDC, no officers were wearing masks. ELIA's mask was taken from him and he was not permitted to wear it. ELIA asked several times why the Sheriffs were not wearing masks. Defendant Sheriff Doe 1 told ELIA to "Shut the fuck up."

74.     Defendant John Doe put ELIA into an isolation cell for approximately an hour.

75.     When ELIA was returned to the holding cell at MCDC, he complained about the

---

motion for contempt is pending as a result of the PPB's deployment of tear gas on June 30, 2020.

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

treatment of the other inmates, the lack of toilet paper in the holding cell, the Sheriffs' ignoring

inmates calls for medical attention and the fact that the Sheriffs were denying Lesley McLam a

menstrual pad.

76.     After one or more of these complaints, Defendant Sheriff Jonelle Olszewski put

ELIA in the isolation cell again. ELIA began suffering a panic attack, experiencing severe

claustrophobia, heart racing, vomiting and mental anguish. It took over 30 minutes for a medic to

attend to him.

77.     ELIA was released at approximately 11:30 AM on July 1, 2020, on his own

recognizance, after spending over 10 hours in jail.

78.     ELIA was charged with Interfering with a Peace/Parole and Probation Officer,

Resisting Arrest, Disorderly Conduct in the First Degree and Assaulting a Public Safety Officer.

His court date was set for September 3, 2020.

## LESLEY MCLAM

79.     On or about June 4, 2020, at SW 3rd Avenue in front of the Justice Center,

Plaintiff MCLAM was documenting the community's protesting the treatment of George Floyd

and other Black Americans at the hands of the police and the police response to the community's

demonstrating.

80.     MCLAM was wearing a black baseball cap with white lettering that identified her

as "PRESS," a backpack that had "MEDIA" on it and prominently displayed her press pass on

her person. She was filming the events as they unfolded with her cell phone on a selfie stick.

81.     MCLAM saw a dumpster set on fire about a half a block away. The dumpster was

in a construction area behind barriers and some of the community members took down the

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

barrier. MCLAM went over to the area and started filming, narrating the events as they unfolded.

82.    While MCLAM was filming, police showed up in riot gear on the other side of the barriers. The police announced the street was closed. As officers began to clear the street, they yelled, "MOVE. MOVE!"

83.    MCLAM backed up and moved to the sidewalk next to a building to allow the officers to pass and to not block people exiting from the street.

84.    As she was filming the events, Defendant Kemmer approached her. MCLAM announced she was press and displayed her press badge. Without warning, Defendant Kemmer violently grabbed her throat and shoved her backward. MCLAM was terrified, her heart pounding and her breath taken away. She yelled "Don't touch me!" several times and continued saying "Press" with her badge displayed.

85.    Defendant Bartlett, along with Defendants John Doe 21 and 22, continued to forcefully push MCLAM backwards as she continued to identify herself as press. Defendant Bartlett yelled he did not care that she was press and pushed MCLAM again.

86.    Defendant Bartlett, along with Defendants John Doe 21 and 22, continued to force MCLAM back into the street onto SW 3rd Avenue where a car sped by, narrowly missing her.

**June 30, 2020 - July 1, 2020**

87.    On June 30, 2020, MCLAM went to a demonstration in North Portland to document the police activity and the events as they unfolded.[6]  She used her cell phone to record the events and streamed to her twitter account (@human42LM) and to her Periscope account

---

[6] The previous day her attorney sent a document preservation letter to the City Attorney instructing the City to preserve all documents concerning the protests from May 29, 2020, to the present.

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

(@Human42LesleyM) that night.

88.     MCLAM saw ELIA being arrested as he was walked to a police vehicle. She started yelling that ELIA was a member of the press and that the police were arresting him unlawfully and violating his First and Fourth Amendment rights. She asked permission to take ELIA's phone and press pass. Defendant Officers John and Jane Does 23-25 denied her request.

89.     As MCLAM attempted to film all of the identifying markings on the officers who were present at the scene.  She stood in the crosswalk in order to get to the sidewalk.

90.     MCLAM saw approximately 6 officers, Defendant Officers John Does 26-31, rush toward her and they tackled her to the ground. MCLAM's glasses flew off as she was tackled and Defendant Officer 31 attempted to wrestle her phone from her grip. One or more of Defendants Officers Does 26-31 hit and/or punched MCLAM in the legs and knees, causing contusions and muscle pain and spraining her ankle. One or more of Defendant Officers Does 26-31 handcuffed MCLAM causing swelling, bruising and tenderness that lasted for several hours.

91.     As she was on the ground, MCLAM yelled that she was a member of the press, doing her job and that they could not arrest her for doing her job.

92.     During her arrest, MCLAM experienced stress and anxiety causing vomiting and urinary incontinence.

93.     One or more of Defendant Officers Does 26-31 put MCLAM in a police van, where she sat for over an hour. She overheard an officer saying they could not take the van to MCDC yet because "it was not full enough."

94.     MCLAM arrived at MCDC at approximately 2:09 AM on July 1, 2020. She was

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

concerned about her personal safety and refused to answer questions about her address while she

was booked. MCLAM did answer all other booking questions.

95.     A MCDC bookings employee who would not identify herself in any manner other

than "Mary," became angry when MCLAM did not understand her instructions. Several

Defendant Sheriffs John Does 2-7 came over and put MCLAM in an isolation cell covered in

what appeared to be dried, sticky vomit and smeared feces. MCLAM was still in her pants, which

were soaked with urine.

96.     While in the isolation cell, MCLAM began cramping and thought the stress of the

situation caused her menstrual cycle to start early. There was no toilet paper or running water in

her cell. MCLAM rang the bell several times to get the sheriff's attention, to no avail. She began

calling out "Can someone get me a pad?!?" One or more Defendant Sheriffs Does 8-9 ignored

her calls for assistance for over 30 minutes before she was brought a pad.

97.     MCLAM stayed in the isolation cell almost the entire time she was at MCDC.

Some time after 11:30 AM, MCLAM heard Defendant Sheriff Doe 10 say, "Do you think she

will learn her lesson?" Defendant Sheriff Doe 11 openly mocked her, laughing at her and stating

she was "not a journalist."  Defendant Sheriff Doe 12 accused MCLAM of making her own press

pass, saying "anyone can make a badge, so that does not mean that they are press." Defendant

Sheriff Doe 13 misrepresented to her that she would not be released.

98.     At 1:16 PM on July 1, 2020, the charges against MCLAM were "no complainted,"

yet MCDC continued to hold her until 6:30 PM, when she was finally released.

99.     When MCLAM was released, Defendant Sheriff Doe 14 represented that he gave

her a debit card with $825 on the card that represented the $75 of cash in her pocket and the $750

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

in bail that had been posted for her. However, when she looked at what she thought was the card wrapped in the receipt, there was no card there.

100.    As of the filing of this complaint, her money has not been returned to her and there are no charges pending against her.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### First Amendment Violation

### Against Defendants Wheeler, Resch, Hurley, Olszewski, Petty, Officer Does, Trooper Does, Sheriff Does
### in Their Individual Capacities

101.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

102.    Plaintiffs were lawfully engaged in the exercise of their First Amendment rights to free press, speech and the right to peacefully assemble. They were standing witness and reporting on matters of public concern, including the demonstrations and the responses by the police, and engaged in an effort to hold the police publically accountable for their use of force and other riot-control conduct.

103.    Plaintiffs repeatedly informed Defendants of their press membership and displayed press credentials prominently to differentiate themselves from the other participants of the movement.

104.    Defendants used false arrest, excessive force, intimidation, the shining of lights into their cameras and other tactics to prevent their reporting on matters of public concern and their efforts to hold the police publically accountable for their use of force and other crowd control management conduct.

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

105.    Defendants' repeated use of excessive force targeting Plaintiffs as members of the press and arrest of Plaintiffs violated their right to engage in activities protected by the First Amendment of the United States Constitution.

106.    Defendants retaliated against Plaintiffs for engaging in constitutionally protected activity. Defendants' retaliation is part of a pattern or practice of unconstitutional conduct that is certain to continue absent any relief.

107.    Plaintiffs reasonably feared arrest, the continued deployment of chemical agents without warning, unlawful seizure, and excessive force through the firing of flash-bang grenades, less-lethal projectiles, riot batons and other means if they continue to engage in constitutionally protected activity.

108.    Defendants' actions as described above would chill a reasonable person from continuing to engage in constitutionally protected activity. These acts did, in fact, chill Plaintiffs from continuing to observe and record some events of public interest, including constitutionally protected demonstrations and the conduct of law enforcement officers on duty in a public place.

109.    Plaintiff ELIA's First Amendment rights were violated when he was deliberately targeted and struck with a baton and shoved into a wall during the course of his reporting activities.

110.    Plaintiff ELIA's First Amendment rights were violated when Defendant John Doe 18 pepper sprayed him during the course of his reporting activities.

111.    Plaintiff ELIA's First Amendment rights were violated when Defendant Bartlett, Defendant Petty, Defendants Officers John Does and Defendant Trooper John Doe subjected him to arrest and detainment.

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

112.    Plaintiff ELIA's First Amendment rights were violated by Defendant Sheriffs

John/Jane Does when he was put in an isolation cell in retaliation for voicing his concerns about

jail conditions and the Sheriffs' willful violation of the Governor's COVID-19 mask mandate.

113.    Plaintiff MCLAM's First Amendment rights were violated when Defendant

Kemmer grabbed MCLAM by the throat and shoved her backward, and Defendant Bartlett and

John Does 20 and 21 pushed and shoved her backward several times during the course of her

reporting activities.

114.    Plaintiff MCLAM's First Amendment rights were violated when Defendant

Officers John Does and Defendant Troopers John Does retaliated against her for her exercise of

those rights by subjecting her to arrest and detainment and their treatment of her in that process.

115.    Plaintiff MCLAM's First Amendment rights were violated when Defendant

Sheriffs John/Jane Does subjected her to the conditions of detention described above and

retaliated against her for her First Amendment speech.

116.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have

suffered physical injury, outrage, betrayal, offense, indignity, and insult in amounts to be

determined by the jury at trial.

117.    Plaintiff ELIA seeks equitable relief in the form of abolition of the policies and/or

practices described in paragraphs 28 through 44, intensive training by experts in the First

Amendment, Civil Disobedience, the importance and history of press, and in the 4th

Amendment, crowd de-escalation techniques, and other training that may be identified during the

course of litigation.

118.    Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

119.    Plaintiffs are entitled to an award of punitive damages from Defendants to punish

and deter them and others from similar conduct in the future.

### SECOND CLAIM FOR RELIEF
### 42 USC §1983
### Fourth Amendment Violation—Unlawful Seizure and Excessive Force

### Against Defendants Wheeler, Resch, Hurley, Olszewski, Petty, Officer Kemmer, Officer Bartlett
### Officer Does, Trooper Does
### in Their Individual Capacities

120.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

121.    Plaintiffs were seized by Defendants when Defendants intentionally, through the

use of physical force, chemical agents, and flash-bang grenades, prevented Plaintiffs' freedom of

movement and arrested them.

122.    Defendants committed these acts without warning and, as a result, Defendants'

acts were objectively unreasonable and constituted unlawful seizure and excessive force.

123.    Plaintiffs posed no threat to any of Defendants, their officers, agents or any other

person.

124.    Plaintiff ELIA's Fourth Amendment rights were violated when he was

deliberately targeted and struck with a baton and shoved into a wall during the course of his

reporting activities.

125.    Plaintiff ELIA's Fourth Amendment rights were violated when Defendants pepper

sprayed him during the course of his reporting activities.

126.    Plaintiff MCLAM's Fourth Amendment rights were violated when Defendant

CREIGHTON
& ROSE, PC    ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Kemmer grabbed MCLAM by the throat and threw her, and Defendant Bartlett and John Does 21 and 22 pushed and shoved her several times during the course of her reporting activities.

127.    Plaintiff MCLAM's Fourth Amendment rights were violated when Defendants arrested her and refused to return her property to her.

128.    Plaintiffs reasonably fear further retaliation in the future if they continue to observe, record, or participate in constitutionally protected activity.

129.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered physical injury, outrage, betrayal, offense, indignity, and insult in amounts to be determined by the jury at trial.

130.    Plaintiff ELIA seeks equitable relief in the form of abolition of the policies and/or practices described in paragraphs 28 through 44, intensive training by experts in the First Amendment, Civil Disobedience, the importance and history of press, and in the 4th Amendment, crowd de-escalation techniques, and other training that may be identified during the course of litigation.

131.    Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

132.    Plaintiffs are entitled to an award of punitive damages from Defendants to punish and deter them and others from similar conduct in the future.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Fourteenth Amendment—Substantive Due Process

### Against Defendant John Doe 18

133.    Plaintiff ELIA restates and realleges all previous paragraphs of this Complaint.

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

134.    Plaintiff ELIA had a liberty interest in his physical security as protected by the Fourteenth Amendment to the United States Constitution.

135.    Defendant John Doe 18, at all times relevant herein, was acting under color of state law.

136.    Defendant John Doe 18, by intentionally and maliciously spraying ELIA in the face with pepper spray, affirmatively created and/or enhanced a danger to ELIA that he would not otherwise have faced. Neither Defendant John Doe 18 nor Defendant John Doe 19 assisted ELIA in reaching safety or provide him with medical attention so he could get to safety himself.

139.    As a direct and proximate result of Defendant Doe 18's actions, ELIA was blinded and stumbled from the area, smacked into a bench, fell over the bench and head first into the pavement, suffering physical injury, pain, outrage, betrayal, offense, indignity, injury and insult in amounts to be determined by the jury at trial.

140.    Plaintiff ELIA seeks equitable relief in the form of abolition of the policies and/or practices described in paragraphs 28 through 44, intensive training by experts in the First Amendment, Civil Disobedience, the importance and history of press, and the 4th Amendment, crowd de-escalation techniques, and other training that may be identified during the course of litigation.

.    141.    Plaintiff ELIA is entitled to reimbursement of his reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

142.    Plaintiff ELIA is entitled to an award of punitive damages from Defendants to punish and deter them and others from similar conduct in the future.

////

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

## FOURTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983
## Monell Claims

### Against City of Portland

143.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

144.    Defendant City of Portland created or maintained policies, customs or practices as described in paragraphs 28 through 44 above. These policies, customs or practices as described in paragraphs 28 through 44 above were created by officials with final decision-making and/or policy-making authority.

145.    The individual agents of the City of Portland followed one or more of the customs or practices as described in paragraphs 28 through 44 above.

146.    The policies, customs or practices as described in paragraphs 28 through 44 above were unconstitutional or caused the violation of Plaintiffs' First, Fourth and Fourteenth Amendment rights of the United States Constitution.

147.    Defendant City of Portland failed to create adequate policies which would have prevented the infringement of Plaintiffs' rights under the First, Fourth and Fourteenth Amendment of the United States Constitution during social justice demonstrations when the need to do so was obvious.

148.    The City of Portland also failed to adequately train their employees and agents with respect to the legal requirements of the First, Fourth and Fourteenth Amendments as they pertain to social justice demonstrations when the need to do so was obvious.

149.    The pattern of similar constitutional violations against Plaintiffs that occurred during the community mobilization against police brutality demonstrates the deliberate

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

indifference of the City of Portland to the rights of Plaintiffs.

150.     As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered physical injury, outrage, betrayal, offense, indignity, and insult in amounts to be determined by the jury at trial.

151.     Plaintiff ELIA seeks equitable relief in the form of abolition of the policies and/or practices described in paragraphs 28 through 44, intensive training by experts in the First Amendment, Civil Disobedience, the importance and history of press, and the 4th Amendment and crowd de-escalation techniques.

152.     Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

153.     Plaintiffs are entitled to an award of punitive damages from Defendants to punish and deter them and others from similar conduct in the future.

## FIFTH CLAIM FOR RELIEF
## 42 U.S.C. § 1981

**Against Defendants Wheeler, Resch, Hurley, Olszewski, Petty, Officer Does, Trooper Does, Sheriff Does
in Their Individual Capacities**

154.     Plaintiffs restate and reallege all previous paragraphs of this Complaint.

155.     Through their presence at the community-based movement and/or protests and documentation thereof, Plaintiffs were asserting the rights of non-white citizens to the full and equal benefit of all laws and proceedings for the security of persons and property as are enjoyed by white citizens.

156.     As described herein, Defendants retaliated against Plaintiffs for asserting the

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

rights of non-white citizens to the full and equal benefit of all laws and proceedings for the security of persons and property as are enjoyed by white citizens.

157.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered physical injury, outrage, betrayal, offense, indignity, and insult in amounts to be determine by the jury at trial.

158.    Plaintiffs seek equitable relief in the form of abolition of the policies and/or practices described in paragraphs 28 through 44.

159.    Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

160.    Plaintiffs are entitled to an award of punitive damages from Defendants to punish and deter them and others from similar conduct in the future.

**SIXTH CLAIM FOR RELIEF**
**42 U.S.C. § 1985**

**Against Defendants Wheeler, Resch, Hurley, Olszewski, Petty, Officer Does, Trooper Does, Sheriff Does**
**in Their Individual Capacities**

161.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

162.    Defendants engaged in a conspiracy to deprive Plaintiffs of their right to equal protection under the law and equal privileges and immunities under the laws based on their opposition to race discrimination in police services.

163.    Defendants' acts in targeting the free press with unprovoked arrests, detention and use of force without probable cause were acts in furtherance of the conspiracy to deprive Plaintiffs of their equal protection rights.

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 31 – COMPLAINT

164.     As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered physical injury, outrage, betrayal, offense, indignity, and insult in amounts to be determined by the jury at trial.

165.     Plaintiffs seek equitable relief in the form of abolition of the policies and/or practices described in paragraphs 28 through 44.

166.     Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

167.     Plaintiffs are entitled to an award of punitive damages from Defendants to punish and deter them and others from similar conduct in the future.

## SEVENTH CLAIM FOR RELIEF
### Battery

### Against City of Portland, State of Oregon, Defendant Petty

168.     Plaintiffs restate and reallege all previous paragraphs of this Complaint.

169.     Defendant City of Portland, through its agents, intentionally engaged in harmful or offensive contact with Plaintiffs, and were acting in the course and scope of their employment.

170.     Defendant City of Portland is responsible for the tortious conduct of their agents and employees, which caused the injuries to Plaintiffs.

171.     Defendant State of Oregon, through its agents acting in the course and scope of their employment, intentionally engaged in harmful or offensive contact with Plaintiff ELIA.

172.     Defendant State of Oregon is responsible for the tortious conduct of their agents and employees, which caused the injuries to Plaintiff ELIA.

173.     As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

suffered physical injury, outrage, betrayal, offense, indignity, and insult in amounts to be determined by the jury at trial.

174.    Plaintiffs seek equitable relief in the form of abolition of the policies and/or practices described in paragraphs 28 through 44.

### EIGHTH CLAIM FOR RELIEF
### Assault

### Against City of Portland, State of Oregon, Defendant Petty

175.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

176.    Defendant City of Portland's and use of excessive, unprovoked and unreasonable force to prevent Plaintiffs from exercising their constitutional rights was intended to cause imminent harmful and offensive contact.

177.    Defendant City of Portland is responsible for the tortious conduct of their agents and employees, which caused the injuries to Plaintiffs.

178.    Defendant State of Oregon's use of excessive, unprovoked and unreasonable force to prevent Plaintiffs from exercising their constitutional rights was intended to cause imminent harmful and offensive contact.

179.    Defendant State of Oregon is responsible for the tortious conduct of their agents and employees, which caused the injuries to Plaintiffs.

180.    Plaintiffs had reasonable apprehension and fear that the battery would occur.

181.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have suffered physical injury, outrage, betrayal, offense, indignity, and insult in amounts to be determined by the jury at trial.

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

182.    Plaintiffs seek equitable relief in the form of abolition of the policies and/or

practices described in paragraphs 28 through 44.

### NINTH CLAIM FOR RELIEF
### False Arrest

**Against City of Portland, State of Oregon, Defendant Petty**

183.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

184.    Defendant City of Portland and Defendant State of Oregon are responsible for the

tortious conduct of their respective agents and employees, which caused the injuries to Plaintiffs.

185.    Defendant City of Portland and Defendant State of Oregon intended to confine

and confined Plaintiffs.

186.    Plaintiffs were aware of their confinement.

187.    Defendant City of Portland and Defendant State of Oregon's confinements of

Plaintiffs were unlawful.

188.    As a direct and proximate result of Defendants' unlawful acts, Plaintiffs have

suffered physical injury, outrage, betrayal, offense, indignity, and insult in amounts to be

determined by the jury at trial.

189.    Plaintiffs seek equitable relief in the form of abolition of the policies and/or

practices described in paragraphs 28 through 44.

### TENTH CLAIM FOR RELIEF
### Negligence

**Against City of Portland**

190.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

191.    Defendants' actions as alleged above violated the standard of care required of law

CREIGHTON
& ROSE, PC

ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 34 – COMPLAINT

enforcement officers under the circumstances.

192.    Defendants' actions created an unreasonable and foreseeable risk of injury to

Plaintiffs.

193.    Defendant City of Portland is responsible for the tortious conduct of their agents

and employees, which caused the injuries to Plaintiffs.

194.    As a direct and proximate result of Defendant City of Portland's unlawful acts,

Plaintiffs have suffered physical injury, outrage, betrayal, offense, indignity, and insult in

amounts to be determined by the jury at trial.

195.    Plaintiffs seek equitable relief in the form of abolition of the policies and/or

practices described in paragraphs 28 through 44.

**ELEVENTH CLAIM FOR RELIEF**
**Declaratory Judgment 28 USC § 2201, et seq.**

**Against Defendants City of Portland, Wheeler, Resch, Hurley, Does**
**in Their Individual Capacities**

196.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

197.    As described herein, Plaintiffs have established a violation of their First, Fourth

and Fourteenth Amendment rights and request a declaration thereof.

198.    Plaintiffs hereby request that the City of Portland and its respective employees and

officials take immediate steps to adhere to the requirements of the First, Fourth, and Fourteenth

Amendments to the United States Constitution by effectuating the following:

a) The Municipal Defendants and their officials shall change and/or supplement any

written policy, official practice, or training they give to their employees, to ensure that those

engaging in political speech are treated fairly and with respect and are not discriminated against

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

PAGE 35 – COMPLAINT

or retaliated against because of their protected speech;

b) abolition of the policies and/or practices described in paragraphs 28 through 44; and

c) intensive training by experts in the First Amendment, Civil Disobedience, the importance and history of press, and in the 4th amendment.

199.    As a direct and proximate result of Defendant City of Portland's unlawful acts, Plaintiffs have suffered physical injury, outrage, betrayal, offense, indignity, and insult in amounts to be determined by the jury at trial.

200.    Plaintiffs are entitled to reimbursement of their reasonable attorneys' fees and costs pursuant to 42 USC § 1988 and 28 USC §1927, if appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs herein, pray for relief as follows:

A.    A restraining order barring Defendants from engaging in unconstitutional conduct targeting journalists;

B.    A declaration that Defendants' conduct violated the First, Fourth, and Fourteenth Amendments of the U.S. Constitution;

C.    Damages compensating Plaintiffs for their injuries, including but not limited to economic and non-economic damages;

D.    Where applicable, an award of punitive damages consistent with the claims above against Defendants in amounts to be determined at trial;

E.    An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

F.    Defendants and their officials shall change and/or supplement any written policy, official practice, or training they give to their employees, to ensure that those engaging in

CREIGHTON
& ROSE, PC | ATTORNEYS
AT LAW

65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

political speech are treated fairly and with respect and are not discriminated against or retaliated

against because of their protected speech;

G.     Abolition of the policies and/or practices described in paragraphs 28 through 44;

and

H.     Intensive training by experts in the First Amendment, Civil Disobedience, the

importance and history of press, the 4th Amendment, crowd de-escalation techniques and any

and all training that may be identified during the course of this litigation.

I.     An award of such other and further relief as the Court deems equitable and just.


**PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**


DATED this 8th day of July, 2020              CREIGHTON & ROSE, PC.

                                               _s/ Beth Creighton_
                                              Beth Creighton, OSB #972440
                                              E-mail: _beth@civilrightspdx.com_
                                              Michael E. Rose, OSB #753221
                                              E-mail: _mrose@civilrightspdx.com_
                                              Laura Koistinen, OSB #175123
                                              E-mail: _laura@civilrightspdx.com_
                                              Attorneys for Plaintiffs

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com